UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL** **'O'**

| | | | |
|---|---|---|---|
| Case No. | 2:26-cv-03432-CAS-PVCx | Date | July 20, 2026 |
| Title | New High Limited v. Daniel Guez et al | | |

| | |
|---|---|
| Present: The Honorable | CHRISTINA A. SNYDER |

| | | |
|---|---|---|
| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| | |
|---|---|
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Taylor Foss | Timothy Laquer<br>Michael Bowse |

**Proceedings:** DEFENDANT AMY GUEZ'S MOTION TO DISMISS AND TO STRIKE PORTIONS OF AMENDED COMPLAINT/PETITION (Dkt. 25, filed on June 22, 2026)

DEFENDANT DANIEL GUEZ'S MOTION TO DISMISS (Dkt. 27, filed on June 22, 2026)

## I. INTRODUCTION

On March 31, 2026, plaintiff New High Limited ("plaintiff" or "New High") filed a complaint against defendants Daniel Guez ("Daniel"), Amy Guez ("Amy"), Jericho Holding Co LLC ("Jericho"), Mapleton Capital, LLC ("Mapleton"), and Does 1-10, inclusive (collectively, "defendants"). Dkt. 1.

On June 8, 2026, plaintiff filed the operative first amended complaint. Dkt. 22 ("FAC"). Plaintiff asserts four claims for relief in the FAC: (1) fraudulent transfer and actual fraud regarding the Euclid Property in violation of California's Uniform Voidable Transactions Act ("UVTA"), Cal. Civ. Code § 3439.04(a)(1), against all defendants; (2) aiding and abetting fraudulent transfer, against defendants Amy, Jericho, and Does 1-10; (3) fraudulent transfer and actual fraud regarding money in bank accounts in violation of the UVTA, against defendants Daniel, Mapleton, Amy, and Does 1-10, inclusive; and (4) a declaratory judgment finding that Daniel, Mapleton, and Jericho are alter egos of one another. FAC ¶¶ 56-126.

On June 22, 2026, Daniel filed a motion to dismiss for lack of standing and failure to state a claim. Dkt. 27 ("Daniel Mot."). On June 29, 2026, plaintiff filed an opposition.

Dkt. 33 (“Daniel Opp.”). On July 6, 2026, Daniel filed a reply. Dkt. 36 (“Daniel Reply”).

On June 22, 2026, Amy filed a motion to dismiss for lack of standing and failure to state a claim and to strike portions of the amended complaint. Dkt. 25 (“Amy Mot.”). On June 29, 2026, plaintiff filed an opposition. Dkt. 32 (“Amy Opp.”). On July 6, 2026, Amy filed a reply. Dkt. 35 (“Amy Reply”). Concurrently, Amy filed a request for judicial notice of Los Angeles County Superior Court divorce records. Dkt. 26.[1]

On July 20, 2026, the Court held a hearing. Having carefully considered the parties’ arguments and submissions, the Court finds and concludes as follows.

## II. BACKGROUND

Plaintiff alleges the following in its FAC:

### A. The Parties

New High, a Hong Kong corporation with its principal place of business in Hong Kong, sells apparel and personal protective equipment (“PPE”). FAC ¶ 4. Defendants Daniel and Amy Guez, at all relevant times to this action, were married and/or in the process of obtaining a divorce but had not entered into any agreement or obtained a

[1] Pursuant to the Federal Rules of Evidence, the Court may take judicial notice of a fact “that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.” Fed. R. Evid. 201(b)(2). The Court “must take judicial notice if a party requests it and the court is supplied with the necessary information.” Fed. R. Evid. 201(c)(2). Plaintiff did not oppose Amy’s request for judicial notice. See generally Amy Opp. “[U]nder Federal Rule of Evidence 201, a court may take judicial notice of matters of public record.” Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001). Federal courts can “take notice of proceedings in other courts, both within and [outside of] the federal judicial system, if those proceedings have a direct relation to the matters at issue.” San Luis v. Badgley, 136 F. Supp. 2d 1136, 1146 (E.D. Cal. 2000) (quoting U.S. ex rel Robinson Rancheria Citizens Council v. Borneo, Inc., 971 F.2d 244, 248 (9th Cir. 1992). As such, the Court takes judicial notice of the divorce records from Los Angeles County Superior Court.

judgment regarding the custody of their three children or the division of their assets. Id. ¶ 6-7.

Daniel directly or indirectly owned and controlled several entities, including but not limited to (a) Global Merch Group, LLC, a Texas LLC, (b) Global Med Group, LLC, a Texas LLC ("Global Med"), (c) Global Merch Group, LLC, a Nevada LLC ("Global Merch Nevada"), (d) defendant Mapleton, (e) Delfern Holdings, LLC, and (f) defendant Jericho. Id. ¶ 12.

Defendant Jericho is a California LLC with its principal place of business in Los Angeles, California. Id. ¶ 8. Mapleton is a member and manager of Jericho. Id. Amy Guez is a member of Jericho and Daniel Guez is an officer of Jericho. Id.

Defendant Mapleton is a Nevada LLC with its principal place of business in Las Vegas, Nevada or Los Angeles, California. Id. ¶ 9. Daniel Guez is a member and manager of Mapleton. Id.

**B. The Underlying Debt**

In January 2020, New High first sold and shipped apparel and PPE to Daniel and some of his entities. Id. ¶ 14. Over the following few years, Daniel and some of his entities failed to pay New High for several orders of apparel and PPE and by the end of 2021, owed New High at least $2,316,636.54. Id. ¶ 15-16.

Daniel was fully aware of the facts establishing his personal liability for obligations owed to New High and Daniel concealed and misrepresented facts relating to his liability to New High. Id. ¶ 17. Daniel created entities as shell companies and used them to confuse plaintiff and other creditors. Id. ¶ 18. While ordering from New High, Daniel confused and blurred names and identities of himself and the entities he controlled. Id. ¶ 19. For example, on April 16, 2020, Daniel sent an email to plaintiff's CEO attaching two purchase orders issued with "Global Med" logos, with delivery to be made to "Global Merch Group, LLC" at 2419 E. 28th St., Vernon, CA 90058, and the "Buyer" was identified as "Daniel Guez." Id. Moreover, at various times, in order to create confusion and avoid paying debts, Daniel's purchase orders and other communications used names of entities that did not exist yet or that had already changed names. Id. ¶ 20. Even though the entities were shell companies that Daniel was using for his own benefit, Daniel represented to plaintiff that "Global Merch Group, LLC" was the one who would be responsible for paying plaintiff. Id. ¶ 21.

On December 10, 2021, in reliance on Daniel's representations, plaintiff filed a lawsuit in this Court against Global Merch Nevada, New High Limited v. Global Merch Group, LLC, Case No. 2:21-cv- 09608-CAS-PVC (the "2021 Action"). Id. ¶ 22. On July 21, 2022, the Court entered default judgment against Global Merch Nevada in the 2021 Action. Id. ¶ 29. On November 5, 2024, after plaintiff discovered that Daniel owned and controlled Global Merch Nevada, Global Med, and Mapleton and that Daniel and the entities were alter egos of one another, New High filed and served a renewed motion to amend judgment to add Daniel, Global Med, and Mapleton as additional judgment debtors. Id. ¶ 38. On January 10, 2025, the Court entered an amended judgment naming Global Merch Nevada, Global Med, Mapleton, and Daniel as judgment debtors. Id. ¶ 43 (citing 2021 Action, dkt. 76). New High has not been able to recover any damages pursuant to the amended judgment. Id. ¶ 45.

### C. Fraudulent Transfers

After New High filed its complaint in the 2021 Action, Daniel became concerned that plaintiff would eventually find out that Global Merch Nevada was a shell company and that Daniel was its alter ego and that, consequently, plaintiff would try to collect from Daniel as an individual. Id. ¶ 63. Daniel informed Amy of his concern that New High would try to collect from him as an individual for the debts alleged against Global Merch Nevada in the 2021 Action. Id. ¶ 64. In order to prevent plaintiff from collecting from him, Daniel then convinced Amy to help him transfer their home to one of his entities, Jericho. Id. Additionally, to prevent plaintiff from collecting from him, Daniel made thirty-four transfers, totaling $533,700.00, from Global Merch's Wells Fargo account to Mapleton's California account at First Republic Bank. Id. ¶ 105.

From approximately December 2005 until approximately May 2022, Daniel and Amy owned, as community property, 327 Euclid Street, Santa Monica, California 90402, APN: 4280-009-038 (the "Euclid Property"). Id. ¶ 46. On or about May 10, 2022, while Daniel was fully aware of his personal liability for New High's claimed debts in the 2021 Action, Daniel and Amy executed a grant deed whereby "Daniel Guez and Amy Guez, husband and wife as community property [transferred the Euclid Property] to Jericho Holdings Co, LLC, a California Limited Liability Company By: Mapleton Capital, LLC, a Nevada Limited Liability Company, Member." Id. ¶ 47.

On or about May 10, 2022, Jericho obtained a loan in the amount of $875,000.00 secured by the Euclid Property through a deed of trust. Id. ¶ 48. The deed of trust was executed by Daniel Guez on behalf of Mapleton as a member of Jericho, and it was also

executed by Amy Guez as a member of Jericho. Id. ¶ 49. Daniel and Mapleton transferred the loan proceeds related to the deed of trust to Jericho and then to Amy, Daniel, and Does 1-10, and Amy received more money through these transfers than she was entitled to. Id. ¶ 72.

On or about July 15, 2022, Daniel executed a grant deed on behalf of Mapleton as a member of Jericho whereby "Jericho Holding Co, LLC, a California Limited Liability Company, By Mapleton Capital, LLC, a Nevada Limited Liability Company, Member [transferred the Euclid Property] to Benjamin Rubinfeld and Hannah Rubinfeld, Husband and Wife as Community Property with Right of Survivorship." Id. ¶ 50. The grant deed states that the documentary transfer tax is $6,985.00, which indicates that the Euclid Property was sold for at least $6,350,000.00. Id. ¶ 74. Daniel and Mapleton transferred the sale proceeds from the Euclid Property to Jericho and then to Amy, Daniel, and Does 1-10, and Amy received more money through these transfers than she was entitled to. Id. ¶ 75.

During the period from March 17, 2022, to July 29, 2022, thirty-four transfers, totaling $533,700.00, were made from Global Merch's Wells Fargo account to Mapleton's California account at First Republic Bank. Id. ¶ 53. On or after July 29, 2022, Daniel and Mapleton transferred some or all of that $533,700.00 from Mapleton's bank account to Daniel, Amy, and Does 1-10. Id. ¶¶ 54-55.

## III. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(1)

A motion to dismiss an action pursuant to Fed. R. Civ. P. 12(b)(1) raises the objection that the federal court has no subject matter jurisdiction over the action. This defect may exist despite the formal sufficiency of the allegations in the complaint. T.B. Harms Co. v. Eliscu, 226 F. Supp. 337, 338 (S.D.N.Y. 1964), aff'd 339 F.2d 823 (2d Cir. 1964). When considering a Rule 12(b)(1) motion challenging the substance of jurisdictional allegations, the Court is not restricted to the face of the pleadings, but may review any evidence, such as declarations and testimony, to resolve any factual disputes concerning the existence of jurisdiction. See McCarthy v. United States, 850 F.2d 558, 560 (9th Cir. 1988).

Once a Rule 12(b)(1) motion has been raised, the burden is on the party asserting jurisdiction. Sopcak v. N. Mountain Helicopter Serv., 52 F.3d 817, 818 (9th Cir. 1995);

Ass'n of Am. Med. Coll. v. United States, 217 F.3d 770, 778-79 (9th Cir. 2000). If jurisdiction is based on a federal question, the pleader must show that he has alleged a claim under federal law and that the claim is not frivolous. See 5B Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure, § 1350, pp. 211, 231 (3d ed. 2004).

### B. Federal Rule of Civil Procedure 12(b)(6)

A motion pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint. Under this Rule, a district court properly dismisses a claim if "there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting Balisteri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[F]actual allegations must be enough to raise a right to relief above the speculative level." Id.

In considering a motion pursuant to Rule 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them. Pareto v. FDIC, 139 F.3d 696, 699 (9th Cir. 1998). The complaint must be read in the light most favorable to the nonmoving party. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). However, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); see Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

Unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials). In re American Cont'l Corp./Lincoln Sav. &

Loan Sec. Litig., 102 F.3d 1524, 1537 (9th Cir. 1996), rev'd on other grounds sub nom Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998). A court may, however, consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201. In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999); see Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).

As a general rule, leave to amend a complaint which has been dismissed should be freely granted. Fed. R. Civ. P. 15(a). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986).

### C. Federal Rule of Civil Procedure 9(b)

Federal Rule of Civil Procedure 9(b) requires that the circumstances constituting a claim for fraud be pled with particularity. Federal Rule of Civil Procedure 9(b) applies not just where a complaint specifically alleges fraud as an essential element of a claim, but also where the claim is "grounded in fraud" or "[sounds] in fraud." Vess v. Ciba-Geigy Corp. U.S.A., 317 F.3d 1097, 1103–04 (9th Cir. 2003). A claim is said to be "grounded in fraud" or "'sounds in fraud'" where a plaintiff alleges that defendant engaged in fraudulent conduct and relies on solely on that conduct to prove a claim. Id. "In that event, . . . the pleading of that claim as a whole must satisfy the particularity requirement of [Fed. R. Civ. P.] 9(b)." Id. However, where a plaintiff alleges claims grounded in fraudulent and non-fraudulent conduct, only the allegations of fraud are subject to heightened pleading requirements. Id. at 1104.

A pleading is sufficient under Fed. R. Civ. P. 9(b) if it "[identifies] the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." Walling v. Beverly Enters., 476 F.2d 393, 397 (9th Cir. 1973). This requires that a false statement must be alleged, and that "circumstances indicating falseness" must be set forth. In re GlenFed Sec. Litig., 42 F.3d 1541, 1548 (9th Cir. 1994). Thus, Rule 9(b) requires a plaintiff to "identify the 'who, what, when, where and how of the misconduct charged,' as well as 'what is false or misleading about [the purportedly fraudulent conduct], and why it is false." Cafasso, ex rel. United States v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1055 (9th Cir. 2011) (quoting Ebeid ex rel. United States v. Lungwitz, 616 F.3d 993, 998 (9th Cir. 2010)).

### D. Federal Rule of Civil Procedure 12(f)

A motion to strike material from a pleading is made pursuant to Fed. R. Civ. P. 12(f). Under Fed. R. Civ. P. 12(f), the Court may strike from a pleading any “insufficient defense” or any material that is “redundant, immaterial, impertinent or scandalous.” A Fed. R. Civ. P. 12(f) motion is not a motion to dismiss for failure to state a claim upon which relief may be granted, and, where not involving a purportedly insufficient defense, simply tests whether a pleading contains inappropriate material. The essential function of a Fed. R. Civ. P. 12(f) motion is to “avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial.” Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir. 1993), rev’d on other grounds, 510 U.S. 517 (1994). Because of “the limited importance of pleadings in federal practice,” motions to strike pursuant to Fed. R. Civ. P. 12(f) are disfavored. Bureerong v. Uvawas, 922 F. Supp. 1450, 1478 (C.D. Cal. 1996).

## IV. DISCUSSION

Daniel and Amy argue that plaintiff’s complaint should be dismissed because plaintiff’s allegations fail to establish Article III standing and fail to state a claim. Daniel Mot. at 4; Amy Mot. at 14-22. The Court addresses each in turn.

### A. Standing

Daniel argues that plaintiff fails to establish that it suffered an injury in fact. Daniel Mot. at 6. Daniel argues that without a valid, enforceable judgment against him, New High is not his creditor, New High has suffered no injury at his hands, and therefore New High holds no “claim” against him within the meaning of the UVTA. Id. Daniel asserts that New High’s entire case against him begins and ends with the validity of the amended judgment in the 2021 Action. Id. at 4. Daniel further argues that the allegedly fraudulent transactions occurred in 2022, while the 2021 Action was pending only against Global Merch, not against Daniel personally. Id. at 3.

In opposition, New High argues that its creditor status does not depend on the amended judgment in the 2021 Action because, pursuant to the UVTA, a plaintiff can assert a claim even if that plaintiff has not filed a lawsuit or obtained a judgment in a prior case. Daniel Opp. at 7 (citing Cal. Civ. Code § 3439.04(a)(1)). New High argues that it has separately alleged a right to payment from Daniel Guez and Mapleton for the apparel and PPE orders under an alter ego theory in this action, regardless of whether the

amended judgment adding Daniel in the 2021 Action is vacated.[2] Id. at 10 (citing FAC ¶¶ 12-17, 61-64, 101-102, 104-105).

In reply, Daniel argues that plaintiff's FAC relies entirely upon the Court's finding of alter ego in the 2021 Action, which he contests, and that the FAC alleges no independent basis to establish Daniel as a debtor. Daniel Reply at 2. Daniel further argues that plaintiff has no present right to payment because the alter ego allegations in the FAC are merely conclusory. Id. at 3-4.

In addition to challenging New High's creditor status with respect to Daniel, Amy argues that New High has not pleaded a right to payment as to her and therefore New High cannot establish an injury in fact as her creditor. Amy Mot. at 14. Amy further argues that the FAC pleads no particularized transfers to her as a transferee of the allegedly fraudulent transfers within the meaning of the UVTA. Id. at 16.

In opposition to Amy's arguments, plaintiff asserts that it is not alleging that Amy Guez is a debtor and that, instead, plaintiff sufficiently alleges that Amy was one of the transferees or beneficiaries of the alleged fraudulent transfers. Amy Opp. at 13-14.

In reply, Amy argues that plaintiff does not adequately plead facts necessary to establish her transferee or beneficiary liability under the UVTA. Amy Reply at 4-5.

To establish Article III standing, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." TransUnion LLC v. Ramirez, 594 U.S. 413, 423 (2021) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-561 (1992)).

The Court finds that New High sufficiently alleges that it is Daniel's "creditor," i.e. that it has a "claim" against Daniel. See Cal. Civ. Code § 3439.01(c). A "claim" is defined in the UVTA as "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." Id. § 3439.01(b). The Court finds

[2] On July 6, 2026, the Court denied Daniel and Global Med's motion to vacate the amended judgement which named Daniel and Global Med as judgment debtors. See 2021 Action, dkt. 139. On July 13, 2026, Daniel Guez and Global Med filed a notice of appeal to the Ninth Circuit Court of Appeals to appeal the order on the motion to vacate the judgment. See 2021 Action, dkt. 142.

that there is and was a valid finding of alter ego and a valid judgment against Daniel in the 2021 Action.[3] See 2021 Action, dkts. 76, 139. Moreover, even absent a valid judgment against Daniel in the 2021 Action, plaintiff, in this action, separately and independently alleges that Daniel is liable for the judgment against Global Merch Nevada and Mapleton in the 2021 Action as an alter ego of those entities. There is an undisputed, valid judgment against both Mapleton and Global Merch Nevada in the 2021 Action. See 2021 Action, dkt. 76.

“At the motion to dismiss stage, the pleading requirements for alleging an alter ego theory are ‘not strict.’ Because ‘the most damning evidence of the ‘unity of interest and identity’ is often in the hands of the corporation and its principals and can be found nowhere else,’ it is sufficient for a plaintiff to plead only ‘two or three’ of the factors[4] showing unity of interest or identity to withstand a motion to dismiss.” Parker v. Country Oaks Partners, LLC, No. SACV 23-00195-CJC (KESX), 2023 WL 3149330, at *3 (C.D. Cal. Mar. 22, 2023) (citing Unichappell Music, Inc. v. Modrock Prod., LLC, 2015 WL 546059, at *4 (C.D. Cal. Feb. 10, 2015)). Plaintiff has alleged specific facts which, taken as true, demonstrate some factors of unity of interest between Daniel and Mapleton and between Daniel and Global Merch Nevada. These facts include, *inter alia*, that (1) Daniel issued purchase orders with the Global Med logo with delivery to be made to Global Merch Nevada and identified himself as the “Buyer,” FAC ¶ 19; (2) Daniel

---

[3] See supra n.2.

[4] “The relevant considerations include: the commingling of funds and other assets; the failure to segregate funds of the individual and the corporation; the unauthorized diversion of corporate funds to other than corporate purposes; the treatment by an individual of corporate assets as his own; the failure to seek authority to issue stock or issue stock under existing authorization; the representation by an individual that he is personally liable for corporate debts; the failure to maintain adequate corporate minutes or records; the intermingling of the individual and corporate records; the ownership of all the stock by a single individual or family; the domination or control of the corporation by the stockholders; the use of a single address for the individual and the corporation; the inadequacy of the corporation's capitalization; the use of the corporation as a mere conduit for an individual's business; the concealment of the ownership of the corporation; the disregard of formalities and the failure to maintain arm's-length transactions with the corporation; and the attempts to segregate liabilities to the corporation.” Mid-Century Ins. Co. v. Gardner, 9 Cal. App. 4th 1205, 1213 n.3 (1992).

represented to plaintiff that "Global Merch Group, LLC" was the one who would be responsible for paying plaintiff, id. ¶ 21; (3) Daniel and Daniel's entities have been represented by attorney Michael A. Bowse, id. ¶ 23; (4) Michael Bowse's client contact at Global Merch Nevada was Daniel and Daniel controlled Global Merch Nevada's response to the 2021 Action, id. ¶ 25; (5) Daniel was the sole member, manager, and officer of Delfern, and Delfern was the sole manager of Global Merch Nevada, id.; (6) in Global Med Group, LLC v. New High Ltd., Case No. 2:22-cv-06031-CAS-PVC, Michael Bowse represented Daniel, Global Med, and Mapleton, id. ¶ 32; (7) Daniel controlled the litigation in the Global Med Action on behalf of himself and his entities, including Mapleton, id. ¶ 33; (8) Daniel executed a Grant Deed on behalf of Mapleton, id. ¶ 50; (9) Daniel was the true owner of the Global Merch Wells Fargo Account, and he signed the application with the statement that he was "an Owner with Control of the Entity," id. ¶ 103; and (10) Daniel made thirty-four transfers from Global Merch's Wells Fargo account to Mapleton's California account at First Republic Bank, id. ¶ 105.

From these facts, the Court can reasonably infer that a least "two or three" factors demonstrating unity of interest are present, e.g., that Daniel used the corporations as mere conduits for his individual business, attempted to segregate liabilities to the corporation, treated corporate assets as his own, concealed his ownership/control over Global Merch Nevada, and diverted corporate funds for his own purposes.

Courts in this circuit have held that an alter ego of a debtor is a "debtor." See e.g., In re Bellardita, No. 05-60471-A-7, 2008 WL 4296554, at *9 (Bankr. E.D. Cal. Sept. 19, 2008) (treating the assets of the alter ego of a debtor as the debtor's assets in a bankruptcy case); In re Turner, 345 B.R. 674, 676 (Bankr. N.D. Cal. 2006), aff'd, No. 02-44874, 2007 WL 7238117 (B.A.P. 9th Cir. Sept. 18, 2007) (holding that a transfer by a debtor's alter ego constituted a transfer by the debtor); In re Star Mountain Res., Inc., No. 2:18-BK-01594-DPC, 2022 WL 2294175, at *11 (Bankr. D. Ariz. June 22, 2022) ("[T]he Nevada Supreme Court confirmed that the alter ego of a debtor "is a 'debtor' under Nevada's Uniform Fraudulent Transfer Act."). Moreover, "alter ego is an equitable [liability] doctrine" and the UVTA expressly provides that the claim asserted by a creditor can be "equitable" and "disputed." See Glam & Glits Nail Design, Inc. v. iGel Beauty, LLC, No. SACV2088JVSDFMX, 2022 WL 2102858, at *5 (C.D. Cal. Apr. 6, 2022) (citation omitted); Cal. Civ. Code § 3439.01(b). Accordingly, the court finds that New High has sufficiently alleged its standing as Daniel's "creditor" in the FAC.

The Court further finds that plaintiff has alleged an injury in fact pursuant to the UVTA: that to prevent plaintiff from collecting from him, Daniel fraudulently transferred money from bank accounts and the Euclid Property. FAC ¶¶ 64, 105; see Cal. Civ. Code § 3439.04 (“A transfer made . . . is voidable as to a creditor…if the debtor made the transfer or incurred the obligation . . . [w]ith actual intent to hinder, delay, or defraud any creditor of the debtor.”). The injury is redressable because judicial relief is available pursuant to UVTA § 3439.07.

Second, as to Amy, the Court finds that the FAC has adequately alleged that Amy is a transferee or beneficiary of a transfer pursuant to the UVTA and therefore has alleged an injury in fact. Regarding fraudulent transfers, the UVTA provides:

> The judgment may be entered against the following:
> (A) The first transferee of the asset or the person for whose benefit the transfer was made.
> (B) An immediate or mediate transferee of the first transferee, other than either of the following:
> (i) A good faith transferee that took for value.
> (ii) An immediate or mediate good faith transferee of a person described in clause (i).

Cal. Civ. Code § 3439.08(b)(1).

Plaintiff alleges that Daniel and Mapleton transferred some or all of the money in Mapleton’s bank account to Amy, FAC ¶ 55, that Daniel and Mapleton transferred deed of trust loan proceeds to Jericho and then to Amy, id. ¶ 72, and that Daniel and Mapleton transferred proceeds from the sale of the Euclid Property to Jericho and then to Amy and that Amy received more money than she was entitled to in said transfer. Id. ¶ 75. Plaintiff therefore alleges that Amy was at times the first transferee, an immediate transferee of the first transferee, or a person for whose benefit the transfer was made.

Plaintiff is not required to plead intent as to the transferee. See Tatung Co. v. Shu Tze Hsu, 43 F. Supp. 3d 1036, 1063 (C.D. Cal. 2014) (holding that allegations as to a transferee need not satisfy the heightened Rule 9(b) standard because the focus is on the intent of the transferor) (citing Wolkowitz v. Beverly (In re Beverly), 374 B.R. 221, 235 (9th Cir. BAP 2007)). Amy argues that the court in Tatung dismissed transferee claims that were better pled than the claims against Amy in the FAC and, therefore, this Court should dismiss the claims against Amy. Amy Reply at 6. However, the alleged transferee in Tatung “was the ultimate beneficiary of . . . transfers” that went through “a

third party that [wa]s undisputedly independent of the allegedly fraudulent scheme at issue." Tatung, 43 F. Supp. at 1063-64. Here, there is no allegation of such a transfer through an undisputedly independent third party outside of the alleged fraudulent scheme. See generally FAC. In fact, the FAC alleges that fraudulent transfers from Daniel and Mapleton were made to "insiders" or entities under the control of Daniel and then to Amy. Id. ¶¶ 55, 72, 75, 80. To the extent that Amy argues that the FAC does not sufficiently allege that she received "more money . . . than she was entitled to" from the alleged fraudulent transfers, the Court finds that this is a factual dispute better resolved on a motion for summary judgment. Amy Reply at 7.

Accordingly, the Court **DENIES** Daniel and Amy's motion to dismiss the FAC for lack of standing pursuant to Fed. R. Civ. P. 12(b)(1).

### B. Failure to State a Claim

Daniel argues that because the alter ego finding and judgment in the 2021 Action are void, New High is not Daniel's creditor and all of the claims against him in the FAC fail as a result. Daniel Mot. at 4. New High alleges that it has a right to payment from Daniel for the judgment in the 2021 action based on two theories: (1) that if this Court denied the motion to vacate in the 2021 Action, there would be a valid judgment against Daniel in the 2021 Action and (2) that Daniel is the alter ego of both Mapleton and Global Merch Nevada and there is a valid judgment against Mapleton and Global Merch Nevada in the 2021 Action. Opp. at 6-10. In Reply, Daniel reiterates his arguments. See generally Daniel Reply.

As discussed above, the Court finds that New High has separately and independently alleged that it is Daniel's creditor in this this action. Accordingly, the Court **DENIES** Daniel's motion to dismiss the FAC for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

Amy argues that New High's three claims against her fail under Rule 12(b)(6), and that New High's fraud claims—the first and third claims—also fail under Rule 9(b). Amy Mot. at 17-22. The Court first discusses the fraud claims, then the aiding and abetting claim against Amy.

///

///

1. First and Third Claims: Fraudulent Transfer and Actual Fraud Regarding Euclid Property and Money in Bank Accounts

Amy first argues that the alleged transfers are not avoidable because the FAC recites and attaches to them the badges of fraud from the statute, without stating any factual basis for the allegations or the belief. Amy Reply at 8. Amy next argues that the FAC labels her as an "insider" to which a transfer was made but does not identify with sufficient particularity anything she received, when she received it, or in what amount. Id. at 9.

In opposition, plaintiff argues that it has sufficiently alleged that Amy was a transferee of the alleged fraudulent transfers and that she was an "insider." Amy Opp. at 14.

The parties make nearly identical arguments regarding the pleadings related to the alleged fraudulent transfer of the money in Mapleton's bank account. See generally Amy Mot.; Amy Opp.; Amy Reply.

The Court finds that the FAC states a claim for fraudulent transfer of the Euclid Property, the loan secured by the Euclid Property, and the money in bank accounts. As discussed, the plain language of the statute only requires fraudulent intent as to the debtor. Cal. Civ. Code § 3439.04(a)(1) ("if the debtor made the transfer . . . with actual intent"). The statute enumerates eleven "badges of fraud" that the Court "may" consider in determining the intent of the debtor. Cal. Civ. Code § 3439.04(b)(1)-(11).

Courts in this circuit have consistently held that the statutory list of "badges of fraud" provides neither a counting rule nor mathematical formula to determine whether or not a transfer was fraudulent and does not compel a finding one way or the other. See e.g., In re Beverly, 374 B.R. 221, 236 (B.A.P. 9th Cir. 2007), aff'd in part, dismissed in part, 551 F.3d 1092 (9th Cir. 2008) ("The UFTA list of "badges of fraud" provides neither a counting rule, nor a mathematical formula. No minimum number of factors tips the scales toward actual intent."); In re Ezra, 537 B.R. 924, 931 (B.A.P. 9th Cir. 2015) ("[T]he trier of fact should consider all of the relevant circumstances surrounding the transfer."); Tatung Co., Ltd. v. Shu Tze Hsu, 217 F. Supp. 3d 1138, 1187 (C.D. Cal. 2016) (holding that whether a transfer was made with fraudulent intent is a question of fact). Further, "[b]ecause direct evidence of fraudulent intent is rarely available, courts infer intent from the totality of the circumstances." In re Fox Ortega Enters., Inc., 631 B.R. 425, 447 (Bankr. N.D. Cal. 2021).

Here, the Court finds that the FAC sufficiently alleges the “who, what, when, where and how of the misconduct charged.” See Ebeid ex rel. United States v. Lungwitz, 616 F.3d 993, 998 (9th Cir. 2010). The FAC identifies the “what”—the transfers by Daniel and Mapleton of the Euclid Property, proceeds from the sale of the Euclid Property, and loan proceeds secured by the Euclid Property with the intent to hinder, delay, or defraud plaintiff. FAC ¶¶ 66-67, 71-72, 73, 75-76. It identifies the “who”—the transfers were allegedly between Daniel, Amy, Jericho, Mapleton, and named third parties. Id. The FAC further identifies the “when,” “where,” and “how”—on or about May 10 and July 15, 2022, in Los Angeles, California through grant deeds, a deed of trust, and, inferentially, bank or other money transfers. Id. ¶¶ 66-77.

Similarly, the FAC alleges the who, what, when, where and how of the alleged fraudulent bank transfers: from March 17, 2022, to July 29, 2022, Daniel transferred from Global Merch’s bank account to Mapleton’s bank account $533,700.00 and that on or after July 29, 2022, Daniel transferred some or all of the $533,700.00 from Mapleton’s bank account to himself and Amy. Id. ¶¶ 97-117.

The question of whether said transfers “w[ere] made with fraudulent intent is a question of fact.” Tatung, 217 F. Supp. 3d at 1187. At a motion to dismiss, the Court must accept all of plaintiff’s material allegations and all reasonable inferences drawn from them as true. Pareto, 139 F.3d at 699. Rule 9(b) “does not require absolute particularity or a recital of the evidence.” United States v. UnitedHealthcare Ins. Co., 848 F.3d 1161, 1180 (9th Cir. 2016). Based on the allegation that Daniel Guez controlled the litigation in the 2021 Action, it can be reasonably inferred that the alleged transfers were made after he was threatened with the possibility of a judgment against him for the debt he accrued through his entities and, therefore, made said transfers with the intent to hinder, delay, or defraud New High as his creditor. FAC ¶ 25; see also 2021 Action, dkt. 75 (finding that Daniel controlled the litigation in the 2021 Action). As to Amy, the FAC alleges that she was a transferee or beneficiary of the alleged transactions and that she received more money through these transfers than she was entitled to. FAC ¶¶ 72, 75. By detailing the alleged fraudulent transfers that plaintiff asserts Amy benefited from or was the recipient of, the FAC “[identifies] the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations.” See Walling v. Beverly Enters., 476 F.2d 393, 397 (9th Cir. 1973).

Accordingly, the Court **DENIES** Amy’s motion to dismiss plaintiff’s first and third claims for fraudulent transfer.

2. Second Claim: Aiding and Abetting Fraudulent Transfer

Amy argues that the FAC pleads knowledge and substantial assistance only as conclusions and fails to plead actual knowledge. Amy Mot. at 20-21. Amy further argues that her signatures on the grant deed and deed of trust are required by law and cannot be used to demonstrate substantial assistance and that all other facts pleaded to demonstrate her substantial assistance are acts by Jericho. Id. at 21.

In its opposition, New High argues that it pleads Amy's actual knowledge and substantial assistance of the alleged fraudulent transfers in the FAC. Amy Opp. at 14-15 (citing FAC ¶¶ 90-95).

In reply, Amy repeats her arguments from her motion to dismiss and additionally argues that her alleged membership in Jericho cannot be used to attach Jericho's alleged conduct to her. Amy Reply at 10.

To make a claim for aiding and abetting fraudulent transfer, New High must allege that Amy had knowledge of the fraud and substantially assisted the fraud. See McNamara v. Wells Fargo & Co., No. 21CV1245-LAB-LL, 2022 WL 22885492, at *3 (S.D. Cal. Mar. 30, 2022) (citing Howard v. Superior Ct., 2 Cal. App. 4th 745, 749 (1992), modified (Feb. 10, 1992); In re First All. Mortg. Co., 471 F.3d 977, 989 (9th Cir. 2006)). Rule 9(b) provides that knowledge may be alleged generally. Fed. R. Civ. P. 9(b).

The FAC alleges facts from which the Court can reasonably infer both that Amy had knowledge of the fraudulent scheme and that she substantially assisted Daniel in effectuating the scheme.

The Court is not persuaded by Amy's argument that knowledge and assistance cannot be inferred by her signature on the deed of trust and grant deed because she was required by statute to sign. It does not follow that because both spouses must sign to transfer community property, that Amy could not have withheld her signature. Simply put, without Amy's signatures, the alleged fraudulent transfer of the Euclid Property would not have been possible, which could reasonably constitute substantial assistance if the requisite knowledge is shown. See Twitter, Inc. v. Taamneh, 598 U.S. 471, 506, 143 S. Ct. 1206, 1230, 215 L. Ed. 2d 444 (2023) ("By their very nature, the concepts of aiding and abetting and substantial assistance do not lend themselves to crisp, bright-line distinctions. . . . When there is a direct nexus between the defendant's acts and the tort,

courts may more easily infer such culpable assistance."). New High generally pleads knowledge and to the extent Amy disputes this point, her knowledge is a question of fact better addressed on a motion for summary judgment.

Accordingly, the Court **DENIES** Amy's motion to dismiss plaintiff's claim for aiding and abetting a fraudulent transfer.

### C. Motion to Strike

#### 1. Punitive Damages Request

Amy argues that the punitive damages request in the FAC should be stricken as to her because the FAC pleads no predicate for them against Amy. Amy Mot. at 23. In opposition, New High states that it "is not requesting punitive damages against Amy." Amy Opp. at 16. The Court finds that the FAC does not request punitive damages as to Amy. FAC ¶¶ 87, 96, 117 (seeking punitive damages against Daniel and Jericho).

Accordingly, the Court **DENIES** defendant's motion to strike plaintiff's request for punitive damages against Amy as there is no such request.

#### 2. Agency Allegation

Amy argues that paragraph 11[5] of the FAC should be stricken as to Amy because it is a boilerplate allegation pled on information and belief and untethered to any facts. Amy Mot. at 23. The Court finds that plaintiff's allegations as to Amy are supported by factual allegations in the FAC. For example, New High alleges, *inter alia*, that Amy was

---

[5] Paragraph 11 alleges as follows:

> Plaintiff is informed and believes, and on that basis alleges, that at all relevant times herein mentioned, each of the Defendants were acting as the agents, servants, employees, successors, predecessors, associates, partners, co-developers, joint venturers, representatives and/or in some capacity, of some of the other Defendants, received voidable transfers from Daniel and/or Daniel's Entities (as defined below), and were at all times herein mentioned, acting within the course and scope of such agency and relationship, and with full knowledge and consent, such that Defendants are jointly and severally liable to Plaintiff.

FAC ¶ 11.

Daniel's wife and a member of Jericho at the times relevant to the alleged fraudulent transfers. FAC ¶¶ 6, 8.

The Court further finds that paragraph 11, read in context of the FAC as a whole, is neither "spurious" nor "redundant, immaterial, impertinent or scandalous" and it is therefore not appropriate to strike pursuant to Rule 12(f).

Accordingly, the Court **DENIES** defendant's motion to strike paragraph 11 of the FAC pursuant to Rule 12(f).

## V. CONCLUSION

In accordance with the foregoing, the Court **DENIES** Daniel and Amy's motion to dismiss plaintiff's FAC.

Defendants shall file their answers to the FAC within 21 days of the issuance of this order.

IT IS SO ORDERED.

| | | | |
|---|---|---|---|
| | 00 | : | 10 |
| Initials of Preparer | CMJ | | |